IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ALEJANDRO GARCIA SOLIZ,

                Petitioner,

v.                                                CIVIL ACTION NO.  2:07-cv-00148

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.,

                Respondents.


**MEMORANDUM OPINION AND ORDER**

Pending before the court is the petitioner's Motion to Stay Removal Proceeding [Docket 6], and Motion to Schedule an Emergency Hearing [Docket 9] and the defendant's Motion to Dismiss [Docket 12]. For the following reasons, the court **GRANTS** the defendant's Motion to Dismiss and **DENIES as MOOT** the petitioner's motions.

**I.**      **Background**

On March 9, 2007, the petitioner, Alejandro Garcia Soliz, filed this action against the United States Citizenship and Immigration Services' ("USCIS") and the United States Attorney General seeking a review of a USCIS decision to deny his application for adjustment of his alien status.[1] Mr. Soliz illegally entered the United States from Mexico in 1991. After living in this country for nearly ten years, he filed his second application for adjustment of status with the USCIS seeking to become

---

[1] Adjustment of status is the process by which certain qualified aliens, who are already present in the United States, may become lawful permanent residents. *See* 8 U.S.C. § 1255 (2006).

a permanent resident in November of 2001.[2] While his application was pending, Mr. Soliz sought to return to Mexico without being legally deemed to have abandoned his application for adjustment of status. As a result, Mr. Soliz filed an application for "advance parole."[3] On February 8, 2002, the USCIS granted the petitioner's application for advance parole and issued a form I-512, which allowed Mr. Soliz to be paroled into the United States prior to February 7, 2003. The I-512 contained the following notice:

> **NOTICE TO APPLICANT**: Presentation of this authorization will permit you to resume your application for adjustment of status upon your return to the United States. If your adjustment application is denied, you will be subject to removal proceedings under section 235(b)(1) or 240 of the Act. If, after April 1, 1997, you were unlawfully present in the United States for more than 180 days before applying for adjustment of status, you may be found inadmissible under section 212(a)(9)(B)(i) of the Act when you return to the United States to resume the processing of your application. If you are found inadmissible, you will need to qualify for a waiver of inadmissibility in order for your adjustment of status application to be approved.

(Defs.' Ex. C.) Notwithstanding the notice, Mr. Soliz went back to Mexico. After leaving the United States, Mr. Soliz paroled back into the country on July 31, 2002 pursuant to his I-512. Ultimately, the USCIS denied Mr. Soliz's application for adjustment of status on July 15, 2005. The USCIS also notified Mr. Soliz that it had determined that he was inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i)(II) because (1) he had been unlawfully present in this country for more than one year before filing his application for adjustment of status; (2) he had left the United States; and (3) he had then returned to the United States within ten years of the date of his departure after acquiring

---

[2] Mr. Soliz had previously filed an application for adjustment of status in 1995 but abandoned the application due to an imminent divorce.

[3] Advance parole is a process by which an alien seeks permission to leave the United States and to be paroled into the United States upon return.

unlawful presence. In addition, the USCIS noted that Mr. Soliz had failed to establish that he was eligible for a discretionary waiver of admissibility.

Because no appeal of the decision was available, Mr. Soliz filed a motion to reopen or reconsider on August 11, 2005. In his motion, Mr. Soliz argued that he should not have been granted advance parole if the consequences of his departure and return could result in the denial of his application for adjustment. The USCIS denied Mr. Soliz's motion to reconsider on May 8, 2006.

Mr. Soliz filed his petition for review in this court on March 9, 2007. He seeks a reversal of the USCIS determination because he claims he should not have been granted advance parole because: (1) his decision to leave the United States would render him inadmissible; and (2) the warning given by the USCIS on the I-512 form regarding the consequences of his leaving the United States was not in Spanish. On May 18, 2007, the USCIS issued a notice to appear to Mr. Soliz to initiate removal proceedings under 8 U.S.C. § 1252.  On May 30, 2007, the petitioner filed a motion in this court to stay the removal proceedings that are set to commence against him on June 21, 2007. The petitioner further filed a motion to schedule an emergency hearing on the issue of whether the court should stay the petitioner's pending removal proceeding.

The government moved to dismiss the petitioner's petition for review on June 14, 2007 pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure*. The government argues that Mr. Soliz is not entitled to judicial review of the decision denying his application for adjustment of status because: (1) this court lacks jurisdiction over the petitioner's case because he has not exhausted his administrative remedies as required by 8 U.S.C. § 1252(d); (2) Congress had specifically stated by statute that the actions, decisions, and determinations of the Attorney General are not subject to judicial review; (3) the USCIS had no duty to provide Soliz with any warning regarding the effect

...

of his departure from the United States, the warning in the I-512 was adequate, and the USCIS had no duty to provide a warning in Spanish; and (4) the denial of Soliz's application for adjustment of status was not erroneous under federal law. Because, I **FIND** that this court lacks jurisdiction to review Mr. Soliz's claims, I will limit my discussion to the jurisdictional issue.

## II.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure* raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir.1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack," questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*. In this case, the government has facially attacked the petitioner's petition.

## III.    Analysis

The government urges the court to dismiss this case because, it asserts, that this court lacks jurisdiction due to the petitioner's failure to exhaust his administrative remedies. According to the government, the petitioner is entitled to a review of the decision denying his request for an adjustment of status in his removal proceedings, thus, his remedies have not yet been exhausted. (Defs.' Mem., at 9.)

Before a person is entitled to judicial relief for a prospective injury, he must first exhaust his administrative remedies. *Darby v. Kemp,* 957 F.2d 145, 147 (4th Cir.1992). "The exhaustion doctrine allows an agency to exercise its discretion and apply its expertise, ensures autonomy, and avoids premature intervention by the courts." *Id.* It also allows the courts to benefit from a fully developed agency record. *Id.*

The exhaustion doctrine is not without exception however. A party is not required to exhaust administrative remedies if: (1) the dispute concerns statutory construction; (2) using administrative procedures would cause irreparable injury; (3) resorting to administrative procedures would be futile; (4) administrative remedies would be inadequate; or (5) the administrative decision would go unreviewed. *Fares v. U.S. I.N.S.*, 1995 WL 115809, at *3 (4th Cir. Mar. 20, 1995) (citing *Darby,* 957 F.2d at 147; *McDonald v. Centra, Inc.,* 946 F.2d 1059, 1063 (4th Cir.1991)).

Here, I **FIND** that Mr. Soliz has not exhausted his administrative remedies, nor does his case fall under any of these exceptions. First, the decision to grant adjustment of status is discretionary, 8 U.S.C. § 1255(a) (2006), and no appeal lies from the denial of adjustment of status. 8 C.F.R. § 245.2(a)(5)(ii). However, when an adjustment of status application has been denied, it may be renewed in removal proceedings. *Id.*; 8 C.F.R. § 245.2(a)(1). At this stage, therefore, the sole avenue for review of the denial of Mr. Soliz's adjustment of status application is before the immigration judge ("IJ") at the removal proceedings.

Second, Mr. Soliz's case does not fall into any of recognized exhaustion exceptions. His case does not involve statutory construction. Requiring Soliz to renew his request for adjustment of status in front of the IJ at the removal proceedings would not cause irreparable injury. Presenting the request to the IJ would not be futile. If the IJ grants Soliz's request, that would be an adequate

remedy. Finally, if the IJ denies the request for adjustment of status, that denial would be subject to judicial review in a habeas action challenging the removal order. *Id.* (citing *Crespo-Gomez v. Richard,* 780 F.2d 932, 933-34 (11th Cir. 1986) (reviewing denial of discretionary relief incident to exclusion proceeding in habeas appeal)). Additionally, the court notes that no recent case appears to permit review by a district court of a USCIS decision to deny adjustment of status for the same reasons I have noted above. *Rivera-Durmaz v. Chertoff*, 456 F. Supp. 2d 943, 953 (N.D. Ill. 2006) (collecting cases) (citing *Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000) (the option of a rehearing on the agency's refusal to adjust petitioner's status imposes an exhaustion requirement); *Howell v. INS*, 72 F.3d 288, 294 (2nd Cir. 1995) (once deportation proceedings are commenced, alien is required to exhaust administrative remedies, instead of directly seeking review in district court; district court therefore properly dismissed action seeking review of the district director's denial of his application for adjustment of his status); *Kashani v. Nelson*, 793 F.2d 818, 824 (7th Cir. 1986) (requiring petitioner to await removal proceedings in order to exhaust administrative remedies before he could seek judicial review of an agency decision denying him asylum)).

### III. Conclusion

Because Mr. Soliz failed to exhaust his administrative remedies and because this case does not fall into one of the exceptions enumerated above, I **FIND** that Mr. Soliz's petition for review of his application for adjustment of status is premature. Consequently, this court lacks jurisdiction to consider the matter. Accordingly, the court **GRANTS** the defendant's motion to dismiss and **DENIES as MOOT** the petitioner's Motion to Stay the Removal Proceeding and Motion to Schedule an Emergency Hearing.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 18, 2007

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE